M. C. GLENN v. DALLAS COUNTY BOIS D'ARC ISLAND LEVEE DISTRICT.

No. 4103.   Decided January 28, 1925.

(268 S. W., 452).

1.—Pleading—Amended and Supplemental Answers.

Defects in a pleading are to be cured by amendment, not by a supplemental pleading, which is in general confined to avoidance of matter alleged by the adversary; though a plea denominated as supplemental may actually constitute an amendment and, if not excepted to, be considered for all it means, instead of what it is called. (Pp. 330, 331).

2.—Same—Question Stated.

Action was for recovery of a levee improvement district assessment tax. Defendant in answer alleged objections to the lawfulness of the tax levy. Plaintiff, by supplemental petition, demurred to the answer and plead that defendant had appeared before the commissioners of appraisement urging certain objections, but not there presenting the ones now asserted. Defendant, by supplemental answer, alleged that he was prevented from then urging them by fraudulent representations by the commissioners and by the supervisors of the district. Demurrer having been sustained to both the answer and the supplemental answer, it is held that the allegations in the latter pleading were not to be considered in determining the sufficiency of the former as against the demurrer sustained to it. (Pp. 330-332).

3.—Levee Improvement District—Findings of Commissioners of Appraisement—Collateral Attack.

The findings of the commissioners of appraisement of a levee improvement district as to the benefits to land and as to the 'laying assessments against it, whether or not these constitute judgments of a court of special jurisdiction, are governed by the same rule as to their liability to collateral attack. Defense to a suit by the reclamation district for recovery of the as-

sessments so levied was a collateral attack on such findings. (Questions as to the constitutionality of the law, not being embraced in the questions certified, are not determined, but its validity assumed). (Pp. 332-337).

#### 4.—Same—Collateral Attack—Fraud.

A collateral attack on a judgment can not be sustained on the ground that a third person or one of the parties has been guilty of false swearing, or fraudulent representations in inducing it, nor that it is the product of error or mistake on the part of the judge. There must be an end of litigation. (P. 335).

#### 5.—Same.

The findings of the commissioners of·appraisement of a levee district were not subject to collateral attack (in suit to enforce the asssessment imposed by them) on the ground that the defendant party was prevented from presenting his defense before them by false representations as to the contemplated improvements made by the supervisors of the district, though innocently repeated to him by the commissioners of appraisement and inducing him not to present before them the objections he was then urging. (Pp. 337, 338).

#### 6.—Levee District—Bonds—Suit to Recover Assessment—Parties.

The owner of property in a levee reclamation district, in resisting the recovery of an assessment on his property, need not make the holders of bonds of the district issued and sold and which the assessment, if recovered, would contribute to meet, parties to the suit in order to enable him to assert a defense thereto. (Pp. 338, 339).

Questions certified from the Court of Civil Appeals for the Fifth District, in an appeal from Dallas County.

The Supreme Court, having referred the questions to the Commission of Appeals, Section A, for their opinion thereon, here adopts that opinion as its answer to them.

*Stroud & Lucas,* and *Spence, Haven, Smithdeal & Spence,* for appellants. The object of a general demurrer is to test the legal sufficiency of a cause of action or defense, and not the form of a pleading. Erie Telegraph Co. v. Grimes, 82 Texas, 94; Warner v. Bailey, 7 Texas, 517; Williams v. Warnell, 28 Texas, 611.

The Legislature can not confer upon the Commissioners Court authority to create another court. The Legislature can not confer upon the Commissioners Court authority to transact any business other than county business. Sec. 18, Art. 5 of the Constitution; Sun Vapor Electric Light Co. v. Keenan, 88 Texas, 199.

The Legislature has the power to create within the state such number of conservation and reclamation districts as may be determined to be essential to the accomplishment of the purposes of the amendment; but the creation and government of a district which lies in Kaufman County is no part of the business of Dallas County, and the Constitution prohibits the Commissioners Court of Dallas County from exercising any jurisdiction whatsoever in Kaufman County.

Appellant attacked the validity of the assessment of benefits against his land.  He did not question the validity of the bonds, nor the right of the district properly to assess and collect taxes for the payment of the interest and the creation of the necessary sinking fund.  Biggs v. Miller, 147 S. W., 637.

Appellant Glenn was under no duty to make the bondholders parties in order that their right to compel a revaluation and a reassessment might be detemined.  Ward County Water Improvement District v. Ward County Irrigation District, 237 S. W., 587; City of Covington v. Schlosser, 133 S. W., 987; City of Tyler v. Tyler, B. & L. Assn., 82 S. W., 1066.

The basis of the fraud alleged is that appellant was denied the right to be heard.  Monticello Distilling Co. v. Mayor, 90 Md., 416, 45 Atl., 211; Willmarth v. Reagan, 242 S. W., 726; 37 Cyc., 1086; Board of Comrs. v. Bullard, 94 Pac., 131; Pacific Postal Tel. Co. v. Dalton, 51 Pac., 1072.

This is not a collateral attack in the sense that it can not be raised in the manner it is done by the defendant's answer and supplemental answer.  For the District Court is the proper court of general jurisdiction in which to attack the order, whether void or voidable.  And under our blended system of law and equity given the same tribunal, it may be done in the resistance to a suit at law in the same way as in a separate suit.  Indeed the only reasonable way was to resist the void order or voidable order in this proceeding.  Why maintain a separate suit to avoid the assessment order, when exactly the same suit in the same court can as conveniently be urged in this case?  Wilmarth v. Reagan, 242 S. W., 727; Brickhouse v. Sutton, 99 N. C., 103, 5 S. E., 380; Williamson v. Berry, 8 How. (U. S.) 495; Seamster v. Blackstock, 83 Va., 232, 2 S. E., 36; Bannon v. Burnes, 39 Fed., 892; Marx v. Hanthorn, 30 Fed., 579.

*Goree, Odell & Allen,* and *Crane & Crane,* for appellee.

Since the allegations of fraud were included only in the supplemental petition they should be ignored in considering the general demurrer because they were not embodied in the first amended original answer.  Townes' Texas Pleading, 445, 463.

Under the Constitution and laws of this State commissioners of appraisement appointed for the purpose of assessing the benefits to property owners in a levee improvement district constitute a court of special jurisdiction for that purpose, whose judgment and decree is final.  Constitution of Texas, Art. V, Sec. 1; Acts Fourth Called Session, 1918; Chapter 44, Sections 19 to 24, inclusive, Vernon's Complete Texas Statutes, Arts. 5584½fff, 5584½hh; Harris County v. Stewart, 91 Texas, 133-139-141-142; Board of Commissioners v.

St. L. S. W. Ry. Co., 257 U. S., 547, 66 L. Ed. 864; Williams v. Castleman, 112 Texas, 193, 247 S. W., 263.

Even though commissioners of appraisement be not considered a court, they constitute a special tribunal to whom the law has confided the authority to hear and determine certain matters arising in ᵗthe course of their duties, and the decrees of such tribunal, within the scope of their authority, are conclusive upon all others and not subject to collateral attack. Hopkins v. Cravey, 85 Texas, 189, 19 S. W., 1067; Thompson v. Devine Ind. School Dist., 249 S. W., 887: City of Houston v. Little, 244 S. W., 247; Williams v. Castleman, 112 Texas, 193, 247 S. W., 263; Parker v. Harris County Drainage Dist., 148 S. W., 351; Fallbrook Irrigation Dist. v. Bradley, 164 U. S.ᵗ 112, 41 L. Ed., 369; Spring Valley Water Works v. Schottler, 110 U. S., 347, 28 L. Ed., 173; Hinerman v. Williams, (Mo.) 224 S. W., 1017; Steel v. St. L. Smelting Co., 106 U. S., 447, 27 L. Ed. 226; Hibben v. Smith, 158 Ind., 206, 62 N. E., 447; Stanley v. Supervisors, 121 U. S., 535, 30 L. Ed., 1000; Loesnitz v. Seelinger, 127 Ind.. 422, 26 N. E., 887; State v. Three States L. Co., 95 S. W., 333 (Mo.); State v. Bank of Mineral Wells, 251 S. W., 1107; Page & Jones on Taxation by assessment, Sec. 927; Biggs v. Board of Comrs., 34 N. E., 500; Book v. Trigg, 217 S. W., 1013; Henderson Cotton Mills v. Trigg, 227 S. W., 577.

A suit to collect taxes is a collateral action to the original assessment proceeding, and the assessments can not be defeated by collateral attacks upon their validity in such a proceeding. Crawford v. McDonald, 88 Texas, 630; People v. Hulin, 83 N. E., 666; Wabash Ry. Co. v. Comrs., 25 N. E., 781; Dickey v. People, 160 Ill., 633, 43 N. E., 606; T. & P. Ry. Co. v. Harrison County, 54 Texas, 119; Palmer v. McMahon, 133 U. S., 660, 33 L. Ed. 772 (774); State v. Bank of Mineral Wells, 251 S. W., 1107; State v. Couts Estate, 149 S. W., 282; Thompson v. Devine School Dist., 249 S. W.ᵗ 887; Biggs v. Board, 34 N. E., 500; Page & Jones Taxation by Assessment, Sec. 1000; Hale v. Moore, (Ark.), 100 S. W., 742; Driver v. Moore, ᵗ98 S. W., 734; Longfellow v. Quimby, 29 Me., 196; Gaither v. Green, 40 La. Ann., 362, 4 So., 210; Taylor v. Comrs. (Ark.), 245 S. W., 491; Wheat v. Ward Co. Water Dist., 217 S. W., 714; Lamberson v. Drainage Dist., 234 S. W., 986 (Ark.); State ex rel. Ashby v. Lbr. Co. (Mo.), 95 S. W.. 333; Loesnitz v. Seelinger, 127 Ind.. 422, 26 N. E., 887; Jackson v. Dyer, 3 N. E., 863; Stanley v. Supervisors, 121 U. S., 535, 30 L. Ed., 1000.

The rule which prohibits collateral attack on a judgment applies to an attack on the ground of fraud in procuring the judgment, and such an attack can only be made in a direct proceeding seasonably filed for that purpose. Murchison v. White, 54 Texas, 78; Mikeska

v. Blumm, 63 Texas, 44; W. C. Belcher Ld. & Mtg. Co. v. Bush, 67 S. W., 444; Scudder v. Cox, 80 S. W., 872; Tadlock v. Eccles, 20 Texas, 792; Maddox v. Summerlin, 49 S. W., 1033, 92 Texas, 483; State v. Bank of Mineral Wells, 251 S. W. 1107; Secs. 18-24, Chap. 44, Fourth Called Sess. 1918, Art. 5584½ff; Art. 5584½gg; Arts. 5584½ggg, 5584½h, 5584½hh; Luck v. Improvement Dist., 217 S. W., 781.

In an action to set aside a judgment for fraud committed in its procurement, the attack is a collateral one unless all persons who it is alleged participated therein are parties to the proceedings. Since the statement of facts contained in the certificate shows that appellant alleged that the board of supervisors and the commissioners of appraisement participated in the alleged fraud and that they are not parties to this proceeding, appellant's suit is a collateral attack on the findings of the commissioners of appraisement. Buchanan v. Bilger, 64 Texas, 589; Johnston v. Loop, 2 Texas, 331; Stephens v. Stephens, 62 Texas, 337; Murchison v. White, 54 Texas, 78; Brooks v. Powell, 29 S. W., 809; Patrucio v. Selkirk, 160 S. W., 635.

The holders of bonds issued by a municipal corporation are necessary parties to any suit which seeks to attack the validity of these bonds by defeating, destroying or limiting the right of the bond-holders to secure the payment of the bonds by the collection of taxes assessed for that purpose. The relief sought by appellant, if granted, will affect the rights acquired by the bond holders, who, strangers to the judgment, purchased the bonds for value, in good faith, and without there being anything in the record or elsewhere, to give them any notice of any vice or infirmity in the proceedings before the commissioners of appraisement. It is manifest therefore that their equities are at least equal to those of appellant, and that relief cannot be granted against them without violating the maxim that where the equities are equal the law will prevail. Dallas County Levee Imp. Dist. No. 3 v. Ayers, 246 S. W., 1112; State v. Bank of Mineral Wells, 251 S. W., 1107; Board v. T. P. Ry. Co. 46 Texas, 316; Dwyer v. Hackworth, 57 Texas, 245; Boesch v. Bryon, 83 S. W., 19; Walling v. Malone Ind. Sch. Dist., 195 S. W., 671; Stratton v. Commissioners' Court, Kinney County, 137 S. W., 1170; Bradford v. Westbrook, 88 S. W., 382; Pendleton v. Ferguson, 99 Texas, 296; Buie v. Cunningham, 29 S. W., 801; City of Tyler v. Tyler Bldg. & Loan Ass'n., 98 Texas, 69; Harter v. Kernochan, 103 U. S., 562, 26 L. Ed., 411; City of Lexington v. Butler, 14 Wall., 282, 20 L. Ed. 809; National Life Ins. Co. v. Board of Education, 63 Fed., 778.

Mr. Judge STAYTON delivered the opinion of the Commission of Appeals, Section A.

The trial court having sustained a general demurrer to the first amended original answer of defendant, who is now appellant, but there being an allegation in a supplemental answer seeking to set up fraud, which, in the Court of Civil Appeals, was claimed to be a defense to the Levee District's suit, the Court of Civil Appeals, upon this situation, has certified as the first of four questions, the following:

"Since the allegations of fraud were included only in the Supplemental Answer filed in response to Appellee's First Supplemental Petition, should they be ignored in considering the General Demurrer because they were not embodied in the First Amended Original Answer or should they be considered as a defense to the cause of action notwithstanding the pleading which contains them is denominated a Supplemental Answer?"

The certificate, and the accompanying papers presented to be considered in aid of it, show this to have been the nature of the proceedings:—plaintiff filed its petition suing for a levee improvement district tax under the Laney Act. Defendant filed a first amended original answer in reply. Plaintiff by first supplemental petition urged a general demurrer to this answer and plead that defendant had appeared before its Commissioners of Appraisement and had objected to the original assessment, that his objections had been granted and cured, and that under the statutes he could not be heard in the further complaint now made. Defendant in a first supplemental answer and expressly in reply to the latter plea averred that his further objection was prevented at the hearing by the false representations of the Commissioners and of the Supervisors of the District. Plaintiff in a first supplemental petition urged a general demurrer to this reply.

The District Court sustained plaintiff's demurrer to the first amended original answer, which is the ruling referred to in the certified question, and also its demurrer, just above mentioned, to the first supplemental answer. The defendant contended in the Court of Civil Appeals that this was error because the first supplemental answer rendered the first amended original answer good as against general demurrer. On this the latter court is in doubt.

The point for investigation is, therefore, whether the Court of Civil Appeals may consider the first amended original answer as aided by the first supplemental answer in a case where it was not so viewed below.

Under the prescribed practice in the District and County courts the original and the supplemental pleadings "constitute separate and

distinct parts of the pleadings of each party'', the former being
for the purpose of stating or defending against the cause of action
and the latter for the purpose of replying to the allegations of the
opposing party immediately preceding them; whereas an amendment
to either, ''as contradistinguished from a supplemental petition or
answer'', is designed to ''add something to, or withdraw something
from '' the amending party's own pleading, so as to cure its deficien-
cies.  (Rules 1 to 15, 142 S. W., XVII - XVIII)  The practice is
suitably designed, and has long been regarded as appropriate. to
settle the issues in an orderly manner and with clearness and dis-
patch; and it is generally understood and easily applied.  The
observance of it in ordinary cases is therefore a reasonable and useful
duty of the District and County courts.  The Supreme Court in
Cresent Ins. Co. v. Camp, et al, 64 Texas, 521, held that the trial
court should not have considered a supplemental petition as an
amendment to the original, because, ''under the rules the defects in
the petition could only be cured by an amendment, whilst the supple-
ment is confined to the avoidance of matter of defense set up in the
answer.''

On the other hand, the principle purposes of pleading, in this State,
being to advise the court of the facts which are relied upon to sustain
or defend the suit, to put each party upon notice of his opponent's
claims in that respect, and to furnish record of the issues, and the
object of the prescribed practice being ''to expedite the dispatch of
business'', the rules regarding the subject should be construed and
applied with those ends in view, and, generally, for those and other
reasons, so as to sustain rather than to overturn the discretion of the
court that primarily administers them.  There are exceptions to literal
compliance with them.  For instance, though a pleading may be
denominated a supplement it may actually constitute an amendment
or set up a counter-claim or a cross-action, and if not excepted to
but allowed to stay in the case until judgment, may be considered for
all that it means instead of what it is called.  Lemp v. Armengol,
86 Texas, 693, 26 S. W., 941; Rains v. Wheeler, 76 Texas, 390, 13
S. W., 324, and authorities following it; Erie Telegraph and Tele-
phone Co. v. Grimes, 82 Texas, 89, 17 S. W., 831; Johnson v. White,
27 S. W., 174; and see generally Const. Sec. 25, Art. V; Barnes v.
Patrick, 105 Texas, 149, 146 S. W., 154; C., R. I. & G. Ry. Co. v.
Pemberton, 106 Texas, 463; Clarendon Land Co. v. McClelland Bros.,
86 Texas, 179.

In the present instance the supplemental answer was not allowed
to remain; demurrer was sustained to it.  And the first amended
original answer also left the case on demurrer.  It is not shown that
the trial court treated the supplement as a part of the original or

acted upon it as such; it is not indicated that either of the parties so acted or, in that respect, that one demurrer was leveled at both pleadings and was sustained on that basis. No elements of waiver, estoppel, substantial compliance, theory of trial, exercise of exceptional discretion or cure, are presented. It is not necessary to consider instances of that sort. The rules and their interpretation in the Camp case were not departed from by the District Court but were obeyed.

There appears to be no reason for disturbing its decision.

The reply given to the first question is, that the allegations in the supplemental answer are not to be considered by the Court of Civil Appeals as a defense to the cause of action.

The second and fourth questions that are certified are:

2. "Do the Commissioners of Appraisement constitute a court of special jurisdiction whose findings of benefits to land and laying of assessments against it constitute decrees and judgments of a court such as may not be collaterally attacked for fraud?"

4. "If the Commissioners of Appraisement do not constitute a court in the sense that their orders and decrees, apparently regularly made under the statutes are not to be considered as the judgment of a judicial tribunal, can a suit for the collection of a delinquent assessment, on its face appearing to have been regularly made in conformity with the statutory provisions of Chapter 44 of the Acts of the Thirty Fifth Legislature be resisted upon allegations of fraud?"

If it should be found that upon collateral attack the same rule applies to ordinary courts and to assessing boards, one answer will suffice for both questions and obviate the decision of whether or not this particular body is a court. For the defense mentioned in both is a collateral attack. Crawford v. McDonald, 88 Texas, 630, 33 S. W., 325; Stanley v. Supervisors, 121 U. S., 542, 30 L. Ed., 1000; State v. Three States Lumber Co., 198 Mo., 430, 95 S. W., 333; Gaither v. Green, 40 La. Ann., 362, 4 So., 210; Dickey v. People, 160 Ill., 633, 43 N. E., 606.

In this inquiry the nature and functions of the Commissioners of Appraisement are first to be noticed. The provisions of the Act, from that viewpoint, will be summarized, and the important phraseology and that emphasized by the parties, will be retained in the process. In passing to the subject, it may be observed that, because no similiar point was raised in the trial court and none is mentioned in the matter or questions certified, the contentions of appellant, submitted in this court, to the effect that certain provisions of the Act are unconstitutional, will not be examined; but the law, for the purpose of his opinion, will be assumed to be valid as written:

1925] GLENN v. LEVEE DISTRICT. 333

The Supervisors or managers of the District appoint as Commissioners of Appraisement three disinterested persons who are not freeholders within the District but own land elsewhere and are unrelated within certain degrees to those so selecting them. The Commissioners at a first meeting take oath for the faithful and impartial discharge of their duties, elect a secretary to act during their continuance in office, a chairman and a vice-chairman. They may at any time call upon the attorney of the District for legal advice; but the Supervisors have no power or authority with respect to their proceedings. After their organization the Commissioners proceed to view the property within the District, or that will be affected by the fulfillment of its "Plan of Reclamation" and assess consequent benefits and damages. They also view all lands outside the District that may be acquired for its purposes under the Act. This done, they make true report of their findings, showing the owner of each piece of property that has been examined and as to which any assessment is made, the amount of damages and all benefits assessed, and the value of all property to be taken or acquired for rights of way or other District purpose. They then give notice to the persons affected, of a hearing upon the report; allow parties interested the right to appear individually or by attorney and to have process for witnesses; exercise the same power as a court of record to enforce the attendance of witnesses; hear and pass upon the affected property owners' objections to their report; make any necessary changes in it; and at last confirm the report or the modified report, and adjudge and apportion costs, by finding, judgment and decree, which is made final and conclusive as to benefits and damages and is entered of record in the minutes of the Board of Supervisors and in the office of the county clerk. This ends their duties; for which they receive a per diem compensation and their expenses. The net benefits, thus found, become the values upon which the tax levies of the District are based; and the damages on account of the improvements, except as to property "taken", furnish the basis for settlement in that regard. (Const. Art. XVI, Sec. 59; Act, Secs. 15, 19-24, 40, 9, 10).

In addition to the foregoing provisions which bear upon the nature of the powers and functions of the Commissioners of Appraisement, it is necessary to observe what character of fraud was pleaded in this suit against that board. The certificate, as a basis for the answer to the questions, supplies this information.

"Appellant admitted that he did appear at the time and place appointed by Commissioners of Appraisement for hearing objections to the assessment, for the purpose of offering his objections and exceptions to the assessment made against his land, and also that he

did state his objections and exceptions to the assessment, but that the Commissioners of Appraisement and the Supervisors of the District in response thereto represented to him that the proposed assessment was made in contemplation of the construction of the canals and ditches, providing hill drainage for such land; that they represented to him that such canal would be constructed with the proceeds of the bonds, and that in reliance on these representations he was induced to desist from urging his objections and that solely because of the representations made by these officials and representatives of Appellee he abandoned the pursuit of his protest in compliance with the procedure prescribed by Statute; that he was misled and deceived by these representations, which were false. He alleged that they were made innocently by the Board of Appraisers but that the Supervisors knew that no such improvements would be made and that they deceived and misled the Board of Appraisers and induced them thereby to make the false representations to Appellant, and that the Supervisors also falsely represented to Appellant that such improvements would be made knowing at the time they made the representations that no hill drainage would be constructed and that none was ever contemplated or intended. It was alleged, in effect, that under these circumstances the officers and representatives of the Levee District fraudulently deprived Appellant of the pursuit of the statutory course of objections and resistance. Appellant also alleged that the only kind of improvement which had been undertaken was the construction of levees to redeem land which overflowed and that the land owned by Appellant and as to which he sought relief was altogether hill land, which could receive no benefits whatever from the levees constructed and which it was always the intention of the officials of the Levee District to construct, but that canals for hill drainage would have benefited his land and that he desired the benefits of such drainage, which, as above stated, the representatives of Appellee stated to him, would be constructed.''

The court is not requested to answer and should not therefore undertake to say, in response to contentions of counsel, whether these were sufficient allegations of fraud, whether the landowner could defensibly act upon any statements for the purpose of ascertaining the contemplated improvements, except those contained in the ''Plan of Reclamation'', or what would be the rule on direct attack; but the questions certified, assuming that fraud was involved, have reference alone to the point of whether or not a defense to a suit for taxes is made out by allegations that the landowner desisted from his objections to the findings of the Commissioners on account of representations consciously false on the part of the Supervisors and innocently false as a result of mistaken belief on the part of the

Commissioners induced thereto by the Supervisors; in other words, whether upon those grounds the findings are subject to collateral attack.

In the instance of a court of this State, a collateral attack against a judgment by a party to it cannot be sustained upon the ground that a third person or one of the parties has been guilty of false swearing or fraudulent representations in inducing it ·nor that it is the product of error or mistake on the part of the judge. The reasons are, that there must be an end of litigation and that the fraud of a party, while it renders a judgment voidable, as it does a contract, does not make it void. Murchison v. White, 54 Texas, 78; Scudder v. Cox, 35 Texas Civ. App., 416, 80 S. W., 872; Williams v. Haynes, 77 Texas, 283, 19 Am. St., 752, 13 S. W., 1029. In the cited cases it was held no support for indirect attack that an administration was had in a county other than that provided by statute by reason of the collusion of a claimant and the administrator, nor that a judgment was obtained in the justice court pursuant to a false affidavit or a misapprehension of service on defendant. In the first of these cases a familiar and frequently misinterpreted principle was explained in this manner: "Upon the question of the effect of fraud in avoiding a transaction, much confusion has . . . . arisen from want of a proper limitation upon the maxim that fraud vitiates everything, even the solemn judgments of a court of record. The fraud of a party does not render the transaction absolutely void within itself, but simply affords the ground to have it declared void by a proper proceeding for this purpose. . . . ." In the third case. the judgment reciting service, it was said that, "Evidence of fraud aliunde the record cannot be heard to dispute the judgment even when the fraud is in obtaining jurisdiction." Other insufficient grounds of collateral attack have been, failure on the part of the judge to follow the law; such failure though unfairly erroneous; confession of judgment by an unauthorized and volunteer attorney; fraudulent trial agreement on the part of a husband resulting in the loss to his wife or her homestead; entry of judgment on a mistaken view of such an agreement; collusion between plaintiff and an unauthorized attorney appointed by the court to represent defendant: and perjured testimony. Clayton v. Hunt, 88 Texas, 595. 32 S. W., 876; Simmons v. Arnim, 110 Texas, 309, 220 S. W., 66; Irion v. Bexar Co., 26 Texas Civ. App., 527, 63 S. W., 552; Maddox v. Summerlin, 92 Texas, 483, 49 S. W., 1033; Mikeska v. Blum. 63 Texas, 44; Brown v. Foster Lbr. Co., 178 S. W., 788. The text writers agree with the effect of these decisions and the weight of authority is in line with them.

If the Commissioners of Appraisement constitute a court it follows that the allegations attacking their judgment were insufficient. If

they were not a court but an assessing body only, the rule is considered to be the same.

That a board of this kind with the functions possessed by this one is at least quasi-judicial, is not open to doubt (Spring Valley Water Works v. Schottler, 110 U. S., 354, 28 L. Ed., 173) and is not disputed. At the final hearing of confirmation the Commissioners virtually decide a law suit. Commissioners etc. v. St. Louis S. W. Ry. Co., 257 U. S., 547, 66 L. Ed., 364.

Bodies of this kind, and many others, are within the operation of certain general and well-understood rules leading to the conclusion just announced. ''Where the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority is conclusive upon all others''. Its jurisdiction necessarily extends to deciding wrong as well as right. Its decisions, being judicial in their nature, are not open to collateral attack, because in that respect they are equal to judgments of any ''court of competent jurisdiction''. The law has seen fit to divide labors and confide certain of them to local bodies and certain of them to courts; and courts should not be disposed to substitute their own findings for those of such bodies which, because of their familiarity with conditions, their functions of view and the usual necessity for prompt and unalterable determinations at a particular time, are considered by the Legislature as especially capable of the work and are consequently given the power, either expressly or by implication, of deciding finally and conclusively. The doctrine has been accordingly announced that such decisions, like the judgments of courts, are not subject to collateral attack except in cases where the body is invalid or has no jurisdiction at the time of its decision. Steel v. Smelting Co., 106 U. S., 450, 27 L. Ed., 226; Stanley v. Supervisors, 121 U. S., 535, 30 L. Ed., 1000; City of Camden v. Mulford, 26 N. J. L., 49; Hibben v. Smith, 158 Ind., 207, 62 N. E., 447, 191 U. S., 321.

Upon one or more of these considerations, where the attack was not direct, finality has, as against a party to the proceeding, been given to the order of a land department issuing a patent; of a city council extending boundaries, determining the necessity of street improvements, or assessing benefits from a sewer system; of a board assessing benefits arising from street improvements; of a county board of review assessing property for taxation; of a county board of commissioners assessing benefits of road improvements; of a county board of equalization, or a board of levy commissioners, assessing benefits for conservation improvements; and of many other similiar bodies that exercise judgment and, after hearing, are empowered to determine policies or questions of local government and develop-

ment. And this effect has been given notwithstanding the action of the body was based upon a mistake of fact; an insufficiency or failure of a statutory prerequisite such as a petition by taxpayers; the adoption of an unstatutory basis, measure or procedure; discrimination; arbitrary action in refusing a hearing to contestant and a consideration of his evidence; perjured testimony or petition; actual fraud on the part of the board or other like condition, act or omission amounting to less than a negation or destruction of jurisdiction. Salmon v. Board, 100 Ark., 366, 140 S. W., 585; City of Houston v. Little, 244 S. W., 255; City of Camden v. Mulford, 26 N. J. L., 49; Loesnitz v. Seelinger, 127 Ind., 422, 26 N. E., 887; State v. Three States Lumber Co., 198 Mo., 430, 95 S. W., 333; Gaither v. Green, 40 La. Ann., 362, 4 So., 211; Biggs v. Board of Com'rs, 7 Ind. App., 142, 34 N. E., 500; Hibben v. Smith, 158 Ind., 207, 62 N. E. 447; Same Case, 191 U. S., 321; Steel v. Smelting Co., 106 U. S., 450, 27 L. Ed., 226; Heman v. Schulte, 166 Mo., 409, 66 S. W., 163: Van Fleet on Collateral Attack, 861; 1 Black on Judgments, 373; 2 Page & Jones Taxation by Assessment, Sec. 927, 1003.

As is demonstrated by these and other cases and textbooks there is no injustice in protecting the findings of these boards from easy attack, but only the observance of a correct public policy. Some of the latter has already been stated. On authority, it appears in still another direction, with especial reference to collateral attack. If, under the present system of procedure, the actions of courts or of boards of this character are to be set aside on collateral attack, many necessary safeguards of justice, such as the making of proper or even necessary parties to the new issue or the urging of limitation, estoppel or some other affirmative defense, become impossible.

But in a proper case, though not one of mere erroneous exercise of discretion or judgment, a direct attack lies as in Wilmarth v. Reagan, 242 S. W., 726, which ordinarily meets every requirement of justice and affords a fair trial to both plaintiff and defendant.

There is no necessity of going to the extent of saying that the judgment of a board, like the Commissioners of Appraisement in the present litigation, may not be set aside on collateral attack for bad faith, gross abuse of discretion or dishonest motives attributable to the constituents of the tribunal itself, because such elements are lacking in this case; but there is no difficulty in saying, by force of the holdings that have been noted, that whether such a board be considered as a court or as merely an assessing body, its final action after the statutory hearing, is not subject to collateral attack for fraudulent misrepresentations of the Supervisors of the District, for incorrect but honest action on the part of the Commissioners, or for wrong result.

So that the second and fourth questions may be answered together. The reply given to them is, that the alleged defense of fraud was not good.

The remaining question is the "Third".

The certificate shows that the suit was brought by the Levee District, which was organized under the Act already mentioned, to recover taxes due from defendant for a particular year and, for that purpose, to foreclose the accompanying tax lien upon his land. It was alleged that the assessment and levy had been made for the purpose of paying bonds which had been sold and were outstanding. The holder of these securities was not a party to the suit. The answer denied the validity of the taxes that were imposed upon defendant because of the alleged invalidity of the assessment, but in a defensive manner only and not by way of cross-bill. It is not shown that anything else was attacked by defendant. As to such a case the third question is certified:

3. "Since the bonds had already been sold before the suit was instituted, was the purchaser of them a necessary party to the suit under the allegations of the parties?"

The suit was not for the collection of an indebtness pledged to whomever might be the holder of the bonds but for taxes authorized by the Constitution and due the District. The District was indebted to the holder of the bonds, the taxpayer was indebted to the District: and the bondholder had no legal cause of action against the taxpayer to recover taxes due, nor he any legal obligation toward the bondholder in that respect. He sought by pleas in bar to avoid payment of what was demanded of him but did not by cross-bill or in other like manner, aver that the bonds were invalid or seek to avoid them or any lien securing them or anything necessary to their validity, nor did he sue to defeat their payment or the assessments or taxes as a whole. If he should succeed in obviating his taxes there is nothing to show that the bondholder would not be promptly paid his interest out of the taxes due by other landowners and, in due time, his principal. And, under the provisions of the Act, not only could the rate of the levy be raised as conditions demanded but, if the other taxpayers should feel too much burden because of defendant's elimination, there could be a second or other assessment which would include a redetermination of his pro rata. Const. Art. XVI, Sec. 58; Ch. 44, Acts 4th Called Session 35th Legislature, Secs. 56, 24, 26, 33, 35, 38, 41, 42, 56; Ch. 50 Acts 1st Called Session 37th Leg., Sec. 6. What has been said responds to all of the distinctions in the decisions and the contentions presented by the District.

An action that will result in prejudice to a bondholder, as one to stop payment of his bonds, requires, according to some cases,

that he be a party; but if a suit for taxes against a particular taxpayer, who simply resists the demand made and not the whole levy, must be delayed or abated until the holder of the bonds is brought in, whatever his circumstance and whether he be a resident or a non-resident, it is apparent that a new and mischievous rule is involved. The law is to the contrary. A bondholder is not a necessary party to a suit to collect taxes when he is not shown to be affected by it, and when as in the present case, no harm to him appears to have been sought or threatened. City of Tyler v. Tyler etc. Assn., 82 S. W. 1066; Same Case, 99 Texas, 6 (see pages 9 and 10 as to bonds of 1882) Townes on Pleading, pp. 258-60; see also City of Austin v. Cahill, 99 Texas, 172; Simpson v. Foster, 46 Texas, 618.

It is contended by the District that the bonds were, under the Constitution, secured by a lien against each taxpayer's property and that the holder was a necessary party for that reason. The point need not be examined because, as stated, there was no attack in this suit upon the bonds nor upon any lien that may have directly existed in behalf of any bondholder to support them; there is merely a defense to the collection of taxes and to the forclosure of the tax lien securing them in behalf of the District.

As indicated in the foregoing opinion the answers that are made to the questions certified are: to the First, that the allegations in the supplemental answer are not to be considered by the Court of Civil Appeals as a defense to the cause of action; to the Second and Fourth, that the alleged defense of fraud was not good; and to the Third, that under the allegations and pleas the purchaser of the bonds was not a necessary party.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

<div align="right">

*C. M. Cureton,* Chief Justice.